No. 12269

IN THE SUPREME COURT OF THE STATE OF MONTANA

1972

---

OTTO CHRISTMAN,

Plaintiff and Appellant,

-vs-

LEONA STROMSTEDT, Formerly
LEONA CHRISTMAN,

Defendant and Respondent.

---

Appeal from: District Court of the Fourth Judicial District,
Honorable Jack L. Green, Judge presiding.

Counsel of Record:

For Appellant:

Robert J. Campbell argued, Missoula, Montana.

For Respondent:

Mulroney, Delaney and Dalby, Missoula, Montana.
Dexter L. Delaney argued, Missoula, Montana.

---

Submitted: November 30, 1972

Decided: JAN 17 1973

Filed: JAN 17 1973

*Thomas J. Kearney*
Clerk

Mr. Chief Justice James T. Harrison delivered the Opinion of the Court.

This is an appeal from a judgment of dismissal entered in the district court of Mineral County. Plaintiff brought the action to recover property held in joint tenancy with the defendant, his former wife, prior to the time he was adjudged an incompetent in 1946. The complaint contained two counts and the court granted a motion to dismiss the first count and no question is raised thereon. This appeal involves only the second count of the complaint, the thrust of which is an accusation by the plaintiff that the defendant defrauded him of certain real property while acting in the capacity of plaintiff's guardian.

The order of the district court was entered on December 22, 1971, and dismissed count 2 of the complaint on its merits and with prejudice for the reason that the plaintiff failed to offer prima facie evidence of liability of the defendant to the plaintiff. This appeal followed.

From the record it appears that on November 4, 1946, plaintiff and defendant were husband and wife and purchased a home and 140 acres of land in Mineral County for $2,000. In December 1946 the plaintiff husband was struck by an intoxicated motorist and as a result of that injury he was taken to the Oregon State Hospital in January 1947 and declared to be incompetent. His incompetency continued until January 1966 when he received his Certificate of Competency and was released from the hospital.

During the period of the plaintiff's incompetency, his wife, the present defendant in this suit, was appointed the plaintiff's guardian. On March 22, 1954, the defendant petitioned the district court in Mineral County for an order to sell the plaintiff's half interest in the Mineral County land. The

- 2 -

guardianship was devoid of funds, and the real property which the parties owned jointly was rapidly deteriorating and, therefore, incapable of producing revenue either for taxes, repairs, or for putting the land in such a condition as to allow the property to be rented or otherwise reasonably used. The defendant's testimony at the trial was that it was her understanding from the plaintiff's physicians that his situation was essentially hopeless and that the guardianship would have gone on for years and years.

We quote a portion of that Petition for Order of Sale of Real Property which states:

> "That it is necessary and for the advantage, benefit and best interests of said estate and those interested therein, including the said Incompetent, that said real estate and personal property be sold for the following reasons:
>
> "That the cost of maintaining said property and payment of taxes thereon is unjustified, as said Incompetent only owns an undivided one-half interest therein, and considerable costs of repairs and maintenance on the buildings upon said premises are now necessary to be done, and there is no cash or funds belonging to said estate available for said purpose.
>
> "WHEREFORE, your petitioner prays that an order be made and entered by this Court granting him [her] license to sell said real estate at either public or private sale, as petitioner may deem most beneficial for said estate." (Emphasis supplied.)

On the basis of that statement, the district court on March 22, 1954, executed an order to show cause returnable on April 19, 1954, some three weeks thereafter. In addition, the defendant-guardian was required to publish a copy of the Order to Show Cause on Application of Guardian for Order of Sale of Real Estate once a week for two successive weeks in the Mineral County Independent, a newspaper of general circulation in that area. That order to show cause was published on April 8 and April 15, 1954.

Thereafter, the court made an Order of Sale of Real Property which was filed on April 19, 1954, and ordered the clerk of the district court to post notices in three public places in Mineral County giving public notice of the sale of plaintiff-incompetent's undivided one-half interest in this property. On April 20, 1954, the clerk of the court certified that those notices were posted and thereafter defendant-guardian caused a notice of sale to be published in the Mineral County Independent on April 22 and on April 29, 1954, giving full public notice of the fact that plaintiff-incompetent's undivided one-half interest would be sold on or after May 1, 1954, in the law office of Walter T. Murphy in Superior, Montana.

That sale took place and there was but one bidder, one Edwin M. Johnson, who offered to purchase the property for $307.80, being 90% of the appraised value of $342. There was no evidence that the sale was conducted in any secretive manner, or that other bidders were discouraged, or that there were other bidders at all.

Thereafter, a return was filed and a petition for order confirming sale of real and personal property was made to the district court by the defendant-guardian, a portion of which petition, the same being filed May 6, 1954, states:

> "That it is to the best interest of the estate of said Incompetent and of all persons interested therein, to sell said property for the following reasons: that there is not money, funds or credit in the said estate with which to pay taxes and to pay for the cost of maintenance and protection of said property; that said land is arid and a dwelling is situated thereon, but that said dwelling is uninhabitable by reason of needed repairs and by the further reason that no water is available for use at said dwelling or upon said land without construction and maintenance of a pipe line to a spring on adjacent Government owned land. That said building is deteriorating and requires expense for upkeep and care, and unless the same is repaired and protected, said property will deteriorate to such an extent that it will have no market value. That said property is of small value. That said property has been appraised at the sum of $342.00 within six months prior to the date of such sale, and that 90% of said value is the fair market value of said property." (Emphasis supplied.)

- 4 -

On May 17, 1954, the court, having recited the fact that lawful notice had been given, confirmed the sale of plaintiff-incompetent's interest in said property to Edwin M. Johnson for the sum of $307.80. On August 5, 1954, the defendant filed a final account and petition for discharge and was discharged from her trust on August 16, 1954.

Ten days after the approval of the sale, the property was transferred again, and the defendant acquired the plaintiff's interest in the real property from the purchaser Johnson. The transfer from Johnson to the defendant was for the exact amount that Johnson paid for the property.

The issue presented to this Court for review is whether or not a guardian of an incompetent, acting as a trustee of his estate, can engage in a sale of estate property to a third party with the intent to transfer the property to the guardian after the sale without violating the fiduciary relationship.

We do not find any evidence of any intent to defraud the plaintiff in the connection with the sale of this property, and we find no bad faith was present on the part of the defendant in this transaction; on the contrary the evidence is all of good faith, full disclosure and court supervision. Plaintiff's position is that a fraud was committed because of the fact that the defendant acquired the plaintiff's interest in the real property from the purchaser Johnson. There can be no question but what transactions involving a guardian's acquisition of a ward's property should be carefully scrutinized because of the inherent possibilities of violations of fiduciary obligations. The district court, in its order of sale of real property, duly found the necessity for the sale of the fractional interest of the ward. Thereafter, the sale was conducted in the guardian's attorney's office to anyone who would care to make a bid, that is, at a public

- 5 -

rather than a private sale. It is not surprising that there would be no person other than the other joint tenant or someone acting on her behalf who would be interested in purchasing the fractional interest. If the sale did not take place in that fashion it is difficult to see, in the absence of any other bidders, how the sale could have occurred at all. Accordingly, the defendant would then have been placed in the position of either financing taxes, repairs and other expenditures in connection with maintenance of the property from her own funds or allowing the same ultimately to revert to the county for taxes. Our position here is that the action of the guardian in connection with the ultimate acquisition of title to the property was, in fact, in the nature of a partition of the property, all in good faith, on the advice of counsel. We hold that the district court was justified in dismissing the plaintiff's action on the basis that the plaintiff had failed to make any showing of any kind of fraudulent motive, intent, or design on the part of the defendant.

While the fiduciary has the positive duty of exercising all reasonable diligence in connection with the care and conservation of a beneficiary's estate, we hold that the fiduciary does not have the duty of individually contributing from his own resources for indefinite periods for the repair, maintenance, or upkeep of his ward's estate. If the ward, as in the case here, had no funds with which to pay those expenses which were necessary in order to keep the property, it should then follow that the only other alternative that the guardian had was to dispose of the property. No breach of the fiduciary duty existed in the conduct of this sale.

The judgment is affirmed.

Chief Justice

- 6 -

We concur:

_Gene B. Daly_

_Frank I. Haswell_

_John Conway Harrison_
Associate Justices

Mr. Justice Wesley Castles does not participate in this cause, deeming himself disqualified.